Ray E. Dugan and Nadi D. Dugan (Husband and Wife) v. Commissioner.
Dugan v. Commissioner
Docket Nos. 58946, 61124.
United States Tax Court
T.C. Memo 1957-187; 1957 Tax Ct. Memo LEXIS 64; 16 T.C.M. (CCH) 831; T.C.M. (RIA) 57187; September 30, 1957
*64 Joseph W. Kiernan, Esq., for the petitioners. Hubert E. Kelly, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income taxes of the petitioners as follows: Docket No.
Year
Amount
58946
1948
$ 265.10
1949
3,492.66
1950
12,282.10
61124
1953
$ 928.30
1954
1,001.18
These cases were consolidated for trial on motion of the parties. Due to concessions made by both parties at the trial and in their briefs the only issue presented herein is whether the gain realized by these petitioners from the sales of certain real property on Longboat Key, Sarasota, Florida, during the taxable years involved, constitutes ordinary income or long-term capital gain. The petitioners conceded the issues as to the statute of limitations being a bar to the assessment and collection of the deficiency for 1948 and as to the disallowance of portions of the miscellaneous deductions claimed by them in the taxable years 1949 and 1950. The respondent conceded that he erred in disallowing the deduction for percentage depletion claimed by the petitioners for the year 1950. The question as to the *65 amount of the medical expense deduction allowable to petitioners in 1953 will be automatically resolved by our decision on the issue before us and the concessions of the parties as above noted. Findings of Fact Some of the facts have been stipulated by the parties and are hereby found to be as stipulated. The petitioners, Ray E. Dugan, hereinafter referred to as the petitioner, and Nadi D. Dugan, are husband and wife residing in St. Petersburg, Florida. For the taxable years 1948, 1949, 1950, 1953, and 1954 they filed joint income tax returns with the collector and director of internal revenue for the district of Florida. The petitioner is the founder and major stockholder of County Finance Company, a corporation organized and incorporated under the laws of the State of Florida on February 3, 1928, and maintaining its principal place of business in St. Petersburg, Florida. The petitioner has always been an officer and director of County Finance and its subsidiary, State Adjustment Company, organized and incorporated in Florida in 1931, and he has been the president of both corporations since 1938. The principal business of the parent corporation is dealing in securities including *66 tax liens. If these liens were not redeemed, they were transferred to the subsidiary which foreclosed thereon, and managed and, when possible, sold the property acquired by such foreclosures. In directing the affairs of these two companies over the years, the petitioner has become familiar with real estate located throughout the entire State of Florida. He has at various times made appraisals of real estate, stocks, bonds, and other personal property in connection with his employment by these two companies. The charters of both corporations granted them broad powers relating to dealing in property of all kinds and included the power of buying and selling real estate. Sometime in 1939 or the early part of 1940 the executors of the estate of Jacob Ruppert offered to sell to the petitioner individually approximately 172 acres of land located on an offshore island known as Logboat Key, as they were anxious to dispose of the property for cash in order that the estate could be settled and liquidated. Longboat Key is situated in the Gulf of Mexico about 6 miles from the city of Sarasota, and is connected by a bridge to the mainland near Sarasota. Another bridge is presently under construction *67 which, when completed, will make Longboat Key accessible by road from the north. Prior to 1940 the Longboat Key property had been subdivided on two different occasions, 1913 and 1925, and plats of the subdivision and resubdivision had been recorded with the clerk of Manatee County. At the time the executors of the estate of Jacob Ruppert offered to sell the Longboat Key property to the petitioner he did not have sufficient money to purchase it by himself. Ultimately, the petitioner and Weyman Willingham, hereinafter referred to as Willingham, decided to purchase the property jointly as an investment with the assumption that it would be sold if and when it increased in value. On December 18, 1940, the petitioner and Willingham purchased the property as a joint venture, it being agreed that each of them would have an undivided one-half interest in the property and that the profits from the sale of it would be divided equally. The total purchase price of the property was $25,000, of which $10,000 was paid in cash and the balance was secured by a mortgage on the property, which mortgage was satisfied on January 16, 1942. Willingham was a resident of St. Petersburg, Florida, where he *68 carried on a business which involved the sale of insurance and real estate, and included rentals, mortgages, and property management. He has held a license to conduct a real estate brokerage business in the State of Florida since 1925. At the time the Longboat Key property was purchased, title to it was taken in the name of C. F. Harrison, an attorney at St. Petersburg, Florida, as trustee for the petitioner and Willingham. Harrison has been the petitioner's attorney for a number of years, and became Willingham's attorney at the time of this purchase. Since the petitioner and Willingham anticipated that they would sell the property, it was decided that it would be to the best interest of both of them to have the property held in trust by Harrison for their use and benefit in order to more easily facilitate conveying the property and to assure an even distribution of the proceeds of the sale of the property. At the time of the purchase of the Longboat Key property, and incident to the examination of the title thereto, Harrison advised the petitioner and Willingham that there were two outstanding plats of subdivisions thereon which had been previously filed in 1913 and 1925 and made *69 a matter of public record in Manatee County, Florida, and also that there were some five or six lots reflected by these plats that had been previously sold. Petitioner and Willingham did not know of the existence of these plats when they agreed to buy this property. The petitioners requested Harrison to attempt to purchase these lots which had been sold under the old plats. Harrison succeeded in purchasing one or two of these lots and negotiations for the purchase of the remaining lots continued until at least August 21, 1953. Approximately 160 acres of the Longboat Key property were leased to the United States Government for use as a gunnery range during World War II. In December 1946, January 1947, and November 1949 the county board of commissioners of Mantee County, at the request of petitioner and Willingham, duly passed and adopted resolutions vacating and reverting to acreage all those portions of the Longboat Key property which had been subdivided on the previously recorded plats. After the close of World War II real estate activity that had theretofore been more or less confined to the east coast of Florida began to spread to the west coast, and Harrison began to get unsolicited *70 inquiries as to possible sales of portions of this property. In 1947 the petitioner and Willingham sold three parcels of the Longboat Key property. The names of the purchasers, the footage sold, the total cost basis of the property (including the expenses of sale), the gross sales price, the total gain, and the petitioner's gain are as follows: Total
Gross
Footage
cost
sales
Total
Petitioner's
Purchaser
sold
basis
price
gain
gain
Gulf Coast
1,000 ft.
$35,000
Properties, Inc.
Edith Snyder
589
$12,055.64
23,500
$53,444.36
$26,722.18
Jenness V. Lynch
200
7,000
Total
$12,055.64
$65,500
$53,444.36
$26,722.18
During 1948 the petitioner and Willingham made one sale through a broker of 250 front feet of the Longboat Key property to A. M. Mulhollan. The total cost basis of this parcel (including the expenses of sale), the gross sales price, the total gain, and the petitioner's gain are in the amounts of $1,141.78, $8,750, $7,608.22, and $3,804.11, respectively. During the year 1949 four parcels of Longboat Key property were sold by the petitioner and Willingham through brokers. The names of the purchasers, the footage *71 sold, the total cost basis of the parcels sold (including expenses of sale), the gross sales price, the total gain, and the petitioner's gain are as follows: Total
Gross
Footage
cost
sales
Total
Petitioner's
Purchaser
sold
basis
price
gain
gain
John M. Wilson
300 ft.
$1,661.04
$10,500
$ 8,838.96
$ 4,419.48
Dr. Wm. C. Atwell
150
1,086.22
7,500
6,413.78
3,206.89
Carl P. Doane
200
1,489.58
10,000
8,510.42
4,255.21
Dorr W. Frisbee
100
699.50
5,000
4,300.50
2,150.25
Total
$4,936.34
$33,000
$28,063.66
$14,031.83
During the year 1950 twelve parcels of Longboat Key property were sold by the petitioner and Willingham through brokers. The names of the purchasers, the footage sold, the total cost basis of the parcels sold (including expenses of sale), the gross sales price, the total gain, and the petitioner's gain are as follows: Footage
Total cost
Gross sales
Purchaser
sold
basis
price
Lillian P. Huisking & Charlotte M.
Yates
350 ft.
$ 2,233.50
$ 15,750
D. Zimmerman
150
1,043.38
7,500
Hugo Ekstrand
100
746.70
5,000
Jacob Nalven
316.4
1,093.08
8,238
Dr. R. W. Maurer
200
1,317.62
9,000
Herman P. Salen
200
1,486.50
10,000
Alton H. Heistad & Edna L. Hanson
600
4,653.30
* 33,000
Clair C. Fisher
100
641.46
4,500
Chas. W. & W. O. Rockey
100
741.52
5,000
John M. Wilson
200
1,375.58
9,500
Floyd Sloulin
100
710.30
5,000
Total
** $16,042.94
$112,488
Less: Additional miscellaneous sales
expense, including abstracts,
surveys, and trustee expenses
*72 Total
Petitioner's
Purchaser
gain
gain
Lillian P. Huisking & Charlotte M.
Yates
$13,516.50
$ 6,758.25
D. Zimmerman
6,456.62
3,228.31
Hugo Ekstrand
4,253.30
2,126.65
Jacob Nalven
7,144.92
3,572.46
Dr. R. W. Maurer
7,682.38
3,841.19
Herman P. Salen
8,513.50
4,256.75
Alton H. Heistad & Edna L. Hanson
28,346.70
14,173.35
Clair C. Fisher
3,858.54
1,929.27
Chas. W. & W. O. Rockey
4,258.48
2,129.24
John M. Wilson
8,124.42
4,062.21
Floyd Sloulin
4,289.70
2,144.85
Total
$96,445.06
$48,222.53
Less: Additional miscellaneous sales
1,148.06
expense, including abstracts,
surveys, and trustee expenses
*** $47,074.83
During the year 1951 three parcels of Longboat Key property were sold by the petitioner and Willingham. The names of the purchasers, the footage sold, and the gross sales price are *73 as follows: Gross
Footage
sales
Purchaser
sold
price
Jacob Nalven
200 ft.
$ 6,750
Frank L. McCartney
100
5,000
Richard G. Tetter
200
17,000 After subtracting the cost basis in these parcels (including the expenses of sale), the petitioner's gain from the sale of these parcels was in the amount of $11,976.84. During the year 1952 one 400-foot parcel of Longboat Key property was sold by the petitioner and Willingham to the Longboat Key Estates. The total cost basis of this parcel (including the expenses of sale), the gross sales price, the total gain, and the petitioner's gain are in the amounts of $4,855, $40,000, $35,145, and $17,555.90, respectively. During the year 1953 the petitioner and Willingham made no sales of the Longboat Key property. However, in this year the petitioner realized a gain in the amount of $1,544.80, representing his one-fourth share of the gain realized by him, A. A. Rabe, Ed Harris, and the estate of George Patterson from the sale of Blocks 172 and 173, Lakewood Estates subdivision, on the installment basis in the year 1951. Also in 1953 the petitioner sold his one-half interests in Lot 12, Block 12, Bayou Heights *74 subdivision, and Lot 23, Block 70, Lakewood Estates subdivision. For the petitioner's one-half interests in these lots the cost basis (including expenses of sale), the gross sales price, and the petitioner's gain are in the amounts as follows: Gross
Peti-
Cost
sales
tioner's
Property
basis
price
gain
Lot 12, Block 12, Bayou
Heights
$113.58
$750
$636.42
Lot 23, Block 70, Lake-
wood Estates
113.72
400
286.28
During the year 1954 two parcels of Longboat Key property were sold by the petitioner. The names of the purchasers, the footage sold, the total cost basis of these parcels (including expenses of sale and brokers' commissions), the gross sales price, and the total gain are as follows: Footage
Total cost
Gross sales
Purchaser
sold
basis
price
Total gain
Bert Parks
200 ft.
$3,295.00
$25,000
$21,705.00
Robert E. Frank
100
1,737.02
12,500
10,762.98
Total
$5,032.02
$37,500
$32,467.98
These two sales were made on the installment basis. During 1954 Bert Parks paid $5,000 and Robert E. Frank paid $2,500 on the purchase price of their respective parcels of Longboat Key property. The petitioner's *75 gain from the sale of these two parcels on the installment basis during 1954 was in the amounts of $4,341 and $2,152.60, respectively. During the year 1948 the petitioner also sold a parcel of property on Cocoanut Beach. The petitioner's total cost basis of this parcel (including the expenses of sale), the sales price, and the petitioner's loss on the sale of this property are in the amounts of $16,838.75, $15,000, and $1,838.75, respectively. In addition, during this year the petitioner sold a lot in the Grandview subdivision. The petitioner's total cost basis in this property (including expenses of sale), the sales price, and the petitioner's gain are in the amounts of $265.90, $506.31, and $240.41, respectively. There were no improvements made by petitioner and Willingham to the Longboat Key property such as building of sea walls and the laying of water mains and sewers. The petitioner has never maintained any office for the purpose of selling the Longboat Key property or any other real estate. He has not used letterheads, invoices, cards, or other indicia holding himself out to be a real estate broker. The petitioner has never been licensed by the State of Florida to be a *76 real estate broker. All sales of real estate by petitioner were made through brokers. All sales of the Longboat Key property during the years in question were effected through various independent real estate brokers in the Sarasota and Bradenton, Florida, areas. Offers to purchase parcels of the property were unsolicited by petitioner, Willingham, and Harrison. They merely held the property until a purchaser appeared with a suitable offer. The negotiations were generally handled by the petitioner, although prior to such negotiations he and Willingham usually discussed the sale or prospective sale of a parcel of the property and were in agreement as to both the price and terms upon which a sale would be consummated. The closings of the various sales made on the Longboat Key property during the years in question were usually handled by Harrison. In 1950 Willingham paid $3,500 to the petitioner in connection with the sales that had been made by them of their Longboat Key property, since the petitioner had handled all the negotiations and Willingham thought that he was entitled to something extra for his time. The petitioner maintained the records of income and expenses of the joint *77 venture between him and Willingham in connection with the Longboat Key property. A summary of all the real estate transactions engaged in by the petitioner during the years 1941 through 1955, including the sales made by the petitioner and Willingham of the Longboat Key property and sales of real estate which was jointly owned by the petitioner and various other third parties, is as follows: [1]
Trans-
Total cost
Gross sell-
Petitioner's
Year
Property sold
actions
basis
ing price
gain
1941
400 acres of land
1
$ 7,453.92
$ 10,500.00
$ 3,046.08
1942
Armstead property
1
4,827.40
12,000.00
* 7,172.60
1944
1 lot
1
2,711.60
4,000.00
1,288.40
1946
2nd Avenue property,
2
17,605.36
45,425.00
27,819.64
Love Joy Nursery
1947
3 parcels
3
12,055.64
65,500.00
26,722.18
1948
Land, 1 lot, 1
3
18,246.42
24,256.31
2,205.77
parcel
1949
4 parcels
4
4,936.34
33,000.00
14,031.83
1950
12 parcels
11
17,191.00
112,488.00
47,074.83
1951
2 Blocks of lots, 3
4
9,251.41
50,750.00
** 16,224.97
parcels
1952
150 lots, 1 parcel
10
10,148.34
73,625.00
31,716.73
1953
2 lots (1/2
2
227.30
1,150.00
922.70
interest)
1954
2 parcels
2
5,032.02
37,500.00
*** 32,467.98
1955
Land
1
125,000.00
861,000.00
**** 97,201.99
*78 During the taxable years 1948, 1949, 1950, 1953, and 1954 the real estate located on Longboat Key and here in question, which was sold by petitioner jointly with Willingham, was not property held for sale to customers in the ordinary course of any trade or business of petitioner. Opinion KERN, Judge: The far from unusual question before us is whether the income here involved resulted from the sale of capital assets or from the sale of property held by petitioner for sale to customers in the ordinary course of his trade or business. It is essentially a question of fact. See . In its solution we have carefully considered the entire record *79 herein. The more pertinent facts we consider to be as follows: Petitioner in 1940 purchased some land on an island off the west coast of Florida as an investment; he did nothing to improve or develop it, and engaged in no sales activities with regard to it; as a result of an unforeseeable increase in real estate activities on the west coast of Florida and not as a result of any development or sales activity of petitioner, there was a rapid increase in the value of this property after World War II, some 7 years after its acquisition; and petitioner (and his co-owner), in response to unsolicited offers to buy, made substantial and frequent sales from this property during the taxable years. Having given due weight to all of the factors pertinent to a resolution of the issue before us, we have concluded that the property sold constituted capital assets in the hands of petitioner and was not property held by petitioner for sale to customers in the regular course of his trade or business. See ; ; ; ; ; *80 . Decisions will be entered under Rule 50. Footnotes
*. The total sales price on this sale of Longboat Key property was $33,000. ↩
**. Including $11,248.80 commissions retained by the brokers from the gross sales prices. ↩
***. In computing the cost basis of the property sold the petitioner has made a mathematical error in the amount of 36 cents which is irreconcilable on the record.↩
1. The total cost basis in the real estate sold and the gross selling price in those instances where the petitioner sold real estate he jointly owned with others is reflected by this schedule.↩
*. Total gain, but reported as installment sale. ↩
**. Includes total gain realized by petitioner from sale of his 1/4 interest in Blocks 172 and 173, Lakewood Estates, reported on installment basis. ↩
***. Total gain, but reported on installment basis. ↩
****. Total gain, but reported on installment basis. ↩